construction of all the machinery and appliances used for the purpose of such transportation. In other words, the carrier of passengers contracts not only for his own skill and care in the conduct of the business, but for the skill and care of all those who have made or furnished any of the instrumentalities or appliances by means of which the business is conducted. *Palmer* v. *Canal Co.*, 120 N. Y. 170, 24 N. E. Rep. 302, and the cases cited; *Carroll* v. *Railroad Co.*, 58 N. Y. 126, 138; *Hegeman* v. *Railroad Corp.*, 13 N. Y. 9. These principles would apply to the case at bar even if it were to be conceded that the imperfect welding of the iron stirrup was the only defect in the construction of the bridge of which the plaintiff could complain, because, even though that defect was not discoverable after the bridge was erected and in operation, it is in evidence, and not questioned by the defendant, that the defect in welding was easily discoverable by the maker of the stirrup on the application of a well-known test. But the concession supposed cannot be required of the plaintiff. The whole question of negligence in the application of counter-weights to the bridge—whether the exercise of even ordinary prudence was evinced in the suspension of loose masses of iron, in troughs, over the heads of passengers, liable to be precipitated upon them whenever a defect should develop itself in the means of suspension—was clearly a question for the jury. This mode of construction was open and apparent to ordinary observation, and against the dangers incident to it, whatever they were, the defendant was bound by its contract to protect its passengers. By its use of the bridge the defendant made it a part of the superstructure of its road, and was as much responsible for its safe condition as for that of any portion of its track. So it has always been held in respect to railroads employing leased lines, or the right of trackage on the lines of other roads. It is to the company contracting for his transportation, and not the company upon whose line the cars of the former are run, to which the passenger may look for compensation for an injury resulting from a defective road. *Railroad Co.* v. *Anderson*, 94 Pa. St. 351; *Murch* v. *Railroad Corp.*, 29 N. H. 9; *John* v. *Bacon*, L. R. 5 C. P. 437. In this case the defendant—under what arrangement does not appear—acquired or assumed the privilege of laying its track over a bridge belonging to the state. It was no less responsible to its passengers for the safe condition of the structure than if it had been of its own construction. We think the question of the negligence, if any, for which the defendant was responsible, was a question for the jury, and that the motion for a nonsuit was improperly granted. The plaintiff's exception to that ruling should be allowed, and a new trial granted, with costs to abide the event. All concur.

---

### *In re* DUNN.

*(Supreme Court, General Term, Fifth Department.    March, 1891.)*

1. APPEAL—EX PARTE ORDERS.
    Code Civil Proc. N. Y. §§ 1347, 1348, c. 12, tit. 4, limits appeals from orders to such as are made on notice; sections 1356, 1357, tit. 5, provides for appeals from orders in special proceedings; and section 1360 applies to all such appeals the general provisions of title 4. *Held*, that an appeal will not lie from an *ex parte* order, but the proper mode to obtain a review of such order is motion, on notice, to vacate or modify it, and the order granting or denying such motion is appealable.

2. INSANITY—WRIT OF INQUIRY—JURY.
    After a commissioner appointed to inquire into the alleged lunacy of a person issued his precept to the sheriff to summon the necessary jury, which the sheriff returned duly executed, the proceedings were stayed by the order of the court. *Held*, that on the termination of the stay the commissioner might obtain an order from the court directing him to issue his precept to the sheriff requiring him to notify the jurors previously summoned to attend before the commissioner at a certain time and place.

Appeal from Wayne county court.

Application by Fanny Dunn for an inquiry into the alleged lunacy of one Harrison Dunn. From an *ex parte* order made on the application of petitioner, said Harrison Dunn appeals.

Argued before DWIGHT, P. J., and CORLETT, J.

*T. Collins, Jr.*, for appellant.    *J. Dunwell*, for respondent.

DWIGHT, P. J. Although we prefer to determine this appeal on the merits, we are unwilling to sanction the practice adopted by the appellant in bringing the appeal from an order granted *ex parte*. The statute relating to appeals to the general term from orders made in actions in the supreme court, expressly limits such appeals to the case of orders made "upon notice." Code Civil Proc. c. 12, tit. 4, §§ 1347, 1348. Sections 1356 and 1357 of title 5 of the same chapter provide for appeals from orders in special proceedings, whether made at special term, or, as in this case, by another court of record of original jurisdiction; and section 1360 applies to all such appeals the general provisions of title 4, including, apparently, those of sections 1347 and 1348 above referred to. This establishes a uniform practice in respect to all appeals from orders, whether in actions or in special proceedings, and whether made at special term or by an inferior court. Under a practice so regulated, an order made *ex parte* can be reviewed, in the first instance, only by motion, on notice, to vacate or modify it, and the order granting or denying that motion is open to review by appeal. So in the case of *In re Johnson*, 27 Hun, 538, the general term in the third department held that an appeal did not lie from an order made *ex parte* by a surrogate's court, saying: "The proper course is to move, on notice, to vacate an *ex parte* order. If the motion is denied, an appeal may lie; but, unless both parties have been heard by the court below, there is not such a decision between them as we should be asked to review. See, also, *People* v. *Common Council of Buffalo*, 30 Hun, 636. The case of *Lancaster* v. *Boorman*, 20 How. Pr. 421, was decided under the former Code of Procedure, and upon the ground of the particular language of section 349 of that statute. That section has been replaced by section 1347, *supra*, of the Code of Civil Procedure, which, as we have seen, expressly confines appeals from orders to such orders as have been granted on notice. The cases of *Finck* v. *Mannering*, 46 Hun, 323, and *Billington* v. *Billington*, 4 N. Y. Supp. 504, were cases of orders which adjudged parties in contempt, and were presumably made on notice; but, whether so or not, the cases were decided under a special provision of the Code (section 2433) applicable to supplementary proceedings only. We are of opinion, therefore, that this appeal might properly be dismissed; but, in order to avoid further protraction of a proceeding which ought to be speedily concluded, we think we should dispose of this appeal on its merits.

On the 10th day of November, 1890, on the petition of the respondent, Fanny Dunn, a commission was duly issued out of the county court of Wayne county, directed to a sole commissioner, to inquire concerning the alleged lunacy of Harrison Dunn, the appellant. In pursuance of the direction of such commission, the commissioner duly issued his precept to the sheriff commanding him to summon the necessary jury, to be and appear before the commissioner at a place named on the 22d day of November, 1890, at 9 o'clock A. M. On that day, and before the hour named, the sheriff made return to the commissioner of the execution of such precept, containing the names of 24 jurors duly summoned by him. On the same day, and before the hour named for the appearance of the jury, an order of the same court which issued the commission was served on the commissioner staying all proceedings in the matter until the hearing and decision of a motion on behalf of the alleged lunatic to set aside and vacate the proceedings so far had therein; notice of which motion, by an order to show cause, for the 2d day of December, 1890, was served with the stay. Accordingly, no step in the proceedings subsequent

to the return of the precept by the sheriff was taken on the 22d day of November. The jury was not convened or sworn, and no adjournment was made of the proceeding. The result of the hearing on the order to show cause, on the 2d day of December, was the denial of the motion on the behalf of the alleged lunatic, and the stay of proceedings was thereby dissolved. Thereafter, and on the 4th day of December, on the *ex parte* application of the petitioner and an affidavit showing the facts above stated, the same court made an order directing the commissioner to issue his precept to the sheriff requiring him to notify the same jurors previously summoned and returned by him to appear before the commissioner at a time and place to be named in such precept to make the inquiry mentioned in the commission and in the former precept. It is from that order that this appeal was taken.

We are unable to see that there is any valid objection to the order. The situation was anomalous, and called for measures not prescribed by the statute. Here was the commissioner with a valid commission in full force; a precept duly issued to the sheriff, and returned by him; jurors duly summoned, and their names returned to the commissioner, but the day fixed for their meeting was past, and there had been no adjournment to a later day. It is very clear that the proceeding has not abated, nor the commission lost its force. The only question is, how shall the commissioner obtain a jury by means of which to prosecute the inquiry committed to him? He has no power to compel the attendance of jurors at a time later than that for which they were summoned, and he cannot issue a new precept, because his authority, in that respect, was spent by its exercise in the first instance. He has resort, therefore, to the source of all authority in the premises, viz., to the court which alone has jurisdiction of the proceeding. Then, it would seem, two courses were open,—either to empower the commissioner to issue a new precept to summon a new jury, or to direct him to reconvene the jury already summoned. The latter course was adopted, and it seems to us to have been the least objectionable of the two. We are unable to see that it was to the prejudice, in any manner, of the rights of the alleged lunatic, nor that it was in contravention of any rule of the statute or of the practice. It was an exercise of discretion on the part of the court, to meet an exigency not provided for by the statute; but in it no provision of the statute was contravened or disregarded. It was the same jury, selected by the sheriff, and not by the court, which had been originally summoned. The order objected to, in effect, simply supplied the place of the adjournment of the proceeding, which ought to have been provided for in the order to show cause. We regard the order as substantially unobjectionable, as within the reasonable discretion of the county court, and one that should be affirmed, with $10 costs and disbursements.